GEORGE W. AYERS, EXECUTOR OF JONAS LAMSON, *v.* FREDERICK MOULTON.

*Grand List.    Taxation.    No.* 58, *Sts.* 1872.    *No.* 5, *Sts.* 1872.

No. 58, Sts. 1872, which provides that listers, before entering upon the duties of their office, shall be sworn to their faithful performance, is mandatory, and must be substantially complied with, to give validity to the list; and'the oath required by s. 36, c. 83, Gen. Sts. to be made to the list on completion thereof, is not such a compliance.

No. 5, Sts. 1872, which directs lists of the quadrennial appraisal of real estate to be returned to the town or city clerk's office on or before the 15th of June, must also be substantially complied with. Thus, where the appraisal was made on June 12th, and signed by one of the listers, and so left in the town clerk's office until taken to the meeting of the county board of listers and signed by another of the listers and indorsed as approved by the chairman of the board, it was *held* that the list was invalid.

GENERAL ASSUMPSIT. Plea, general issue, and trial by the court, December Term, 1877, Windsor County, BARRETT, J., presiding.

The plaintiff sought to recover, with interest, the sum of $217 that the plaintiff, as surviving executor of the will of Jonas Lamson, deceased, paid under protest to defendant as collector of taxes for the town of West Windsor, in payment of a town tax of $163, a state tax of $24.41, and a state school tax of $7.32, assessed against the estate of said Lamson on the grand list of 1874, and in payment also of $22.27 costs thereon.

The town tax in question, which was voted by said town at its annual March meeting in 1874, was assessed on the annual list of that year, which was made up from the appraisal of personal property for that year and the quinquennial appraisal of real es-

tate for 1870. The state and state school taxes were assessed on the quadrennial list of that year, which was made up throughout from the appraisal of that year. There were both personalty and realty set to said estate in each list. The listers of said town for 1874 did not take and subscribe the official oath required by the provisions of No. 58, Sts. of 1872, nor was any record of any such oath ever made ; and said listers never took any oath, as such, except on May 15, when they certified, subscribed, and swore to the list then returned, in the form provided by s. 36, c. 83, Gen. Sts., and, on November 28, after completing the quadrennial appraisal and the list based thereon, they took and subscribed an official oath according to the form provided by s. 35, c. 83, Gen. Sts. The quinquennial list of 1870 was not completed, signed, and sworn to until December 28 of that year. The appraisal of real estate for 1874 was made by the listers and left in the town clerk's office on June 12, but was signed by only one of the listers. It remained in that condition until the meeting of the county board of listers, when it was taken to the meeting and signed by another of the listers, and indorsed as approved by the chairman of the board.

Other questions were made as to the regularity of the tax. One question was as to the assessment *to the estate* of the decedent, instead of to his executors, and as to the constitutionality of No. 269, Sts. 1876, by which that and other like assessments were attempted to be legalized. Other questions were as to the sufficieney of notices given by the listers of the time and place, &c., for the hearing of grievances. But those questions are rendered immaterial by the decision of the court, and the facts relative thereto are not stated.

The court rendered judgment, *pro forma*, for the defendant ; to which the plaintiff excepted.

*Gilbert A. Davis*, for the plaintiff.

The money having been paid under legal protest and being still in the defendant's hands, may be recovered. *Allen* v. *Burlington*, 45 Vt. 202 ; *Henry* v. *Chester*, 15 Vt. 460.

The burden of justifying the collection is on the defendant.

To that end he must show the legality of all previous proceedings. *Collamer* v. *Drury*, 16 Vt. 574; *Downing* v. *Roberts*, 21 Vt. 441; *Downer* v. *Woodbury*, 19 Vt. 329.

· The quadrennial appraisal of real estate in 1874 was void, for that the list was not filed in compliance with the statute. Gen. Sts. c. 83, s. 25; Sts. 1872, No. 5, s. 2; *Reed* v. *Chandler*, 32 Vt. 285; *Thayer* v. *Stevens*, 1 Pick. 482; *Thurston* v. *Little*, 3 Mass. 432; *Blossom* v. *Cannon*, 14 Mass. 177; *Cardigan* v. *Page*, 6 N. H. 192; *Billings* v. *Dutton*, 15 Ill. 218; *Marsh* v. *Chesnut*, 14 Ill. 222; *Wheeler* v. *Mills*, 40 Barb. 644; *Van Rensselaer* v. *Witbeck*, 3 Selden, 517; *Johnson* v. *Goodridge*, 15 Me. 29; *Calley* v. *Russell*, 3 Greenl. 227; *Foxcroft* v. *Nevens*, 4 Greenl. 72; *Thames Mfg. Co.* v. *Lathrop*, 7 Conn. 550.

The quinquennial appraisal for 1870 was also void. The appraisal was not completed until after December 15th. Gen. Sts. c. 83, s. 34; *Houghton* v. *Hall*, 47 Vt. 333. ·

The listers should have taken the oath required by No. 58, Sts. 1872, before entering upon the duties of their office. THOMPSON, C. J., in *People* v. *Utica Ins. Co.* 15 Johns. 358, 380; *Whitney* v. *Whitney*, 14 Mass. 92. That act and s. 35, c. 83, Gen. Sts. are both in force and should have been complied with. The analogies of the statutes on other subjects tend to the same result. Gen. Sts. c. 15, s. 26; *Bowman* v. *Barnard*, 24 Vt. 355, and cases *passim*. The statute of 1872 was not directory. Sedgw. Stat. Law, 308; BARRETT, J., in *Crosby* v. *School District*, 35 Vt. 623, 630; *Holland* v. *Osgood*, 8 Vt. 276; HEBARD, J., in *Briggs* v. *Georgia*, 15 Vt. 61, 72.

*French & Southgate*, for the defendant.

The fact that the listers did not take the official oath before entering upon their duties cannot render the list void. Gen. Sts. c. 15, s. 16; c. 83, ss. 30, 35, 36; Sts. 1872, No. 58; *Hale* v. *Cushing*, 2 Greenl. 28; *Scarborough* v. *Parker*, 53 Me. 252; Cooley Tax. 219; *Reed* v. *Chandler*, 32 Vt. 285; *Houghton* v. *Hall*, 47 Vt. 333.

The fact that the quadrennial list for 1874 was not completed until after December 15th does not render the list void. The

statutes as to the time when lists are to be completed are directory. Gen. Sts. c. 83, s. 36 ; *Henry* v. *Chester*, 15 Vt. 460.

Any informality in the quinquennial list of 1870 was cured by the carrying of it forward into subsequent annual lists.

The time when the listers first made their appraisal in 1874, and carried it to the meeting of the county board for revision, is of no importance. It was not a *list* until completed, signed, and sworn to, and left in the town clerk's office.

The opinion of the court was delivered by

ROYCE, J. This suit is brought to recover back the amount of certain taxes that were paid under protest by the plaintiff to the defendant as the collector of taxes for the town of West Windsor, and that were assessed against the estate of Jonas Lamson on the grand list of 1874. The town tax, amounting to $163, was assessed on the list that the listers were required by law to complete and lodge in the town clerk's office on or before the 15th of May. It appears that the listers did not subscribe an official oath, and were not sworn in, as required by the provisions of No. 58, Sts. 1872, and there was no record of such oath ; and they did not take any official oath as such listers, except that, on the 15th of May, 1874, they certified, subscribed, and swore to such list as is required by s. 36, c. 83, Gen. Sts. Previous to 1872, the last-mentioned oath was the only one that listers were required to take, sign, and certify to. Section 16, c. 15, Gen. Sts., which provided that certain town officers, not including listers, should be sworn to a faithful discharge of the duties of their respective offices, was so amended by the statute of 1872 as to include listers ; and that provided that before entering upon the duties of their office they should be sworn to a faithful discharge of the duties thereof, and the town clerk was required to make a record of said oath. The form of the oath that they are required to take is given in said act. That oath has reference to their prospective duties as such listers ; the form given in the Gen. Sts. has reference to duties already performed. Section 36, c. 83, Gen. Sts. not having been repealed nor altered by the statute of 1872, the obligation of the listers to take both of the oaths was imperative,

unless the court would be justified in holding that one or the other of the statutes is simply directory; and the court are now asked to treat the statute of 1872 as directory, and hold that the taking of the oath by the listers as prescribed by s. 36, c. 83, Gen. Sts., was a substantial compliance with the requirements of the law.

The language of the statute of 1872 is imperative upon the listers, and compliance with its requirements was evidently intended by the Legislature as a condition precedent to their right to enter upon the duties of the office. Nothing was left to their discretion, and in all its characteristics it comes clearly within the definition of a mandatory law, and, coming within that definition, it is not the province of the court to question its wisdom nor necessity. The act, then, being mandatory upon the listers, a substantial compliance with its requirements was necessary, to give validity to the list as a basis for taxation, and the oath that the listers did take was not such a compliance. That list, then, being an illegal list, the taxes that were assessed upon it, and paid under protest, may be recovered back. The quinquennial list of 1870, containing the appraisal of the real estate that was included in the aforesaid list, it appears, was not completed, signed, and sworn to by the listers until the 28th of December, 1870. The statute required that they should complete and return the list to the town clerk's office on or before the 15th of December.

There was also an irregularity in making and completing the quadrennial appraisal of real estate for the year 1874, and the state and state school taxes for that year were assessed upon the list including such appraisal. It appears that the appraisal of real estate for that year was made by the listers, and left in the town clerk's office on June 12th, but was signed by only one of the listers, and remained in that condition until it was taken by one of the listers to the meeting of the county board of listers, and was then signed by such lister, and indorsed as approved by the chairman of said board; and from that appraisal the quadrennial list was afterwards made by the listers, signed, and sworn to by them, and deposited in the town clerk's office. The listers, by No. 5, Sts. 1872, were directed to make out and lodge a copy

of such appraisal in the town clerk's office on or before the 15th day of June. The copy of the appraisal left in the town-clerk's office was not signed by but one of the listers, and such a copy was not a copy of the appraisal made by the listers. The purpose of requiring such a copy to be left is indicated in s. 31, c. 83 Gen. Sts., which requires the listers to revise and correct all errors-that may be discovered in the appraisal of real estate before the meeting of the county board ; and by No. 5, Sts. 1872, a right of appeal is secured to any party feeling aggrieved by the appraisal of real estate, if demanded within three days after the list is returned to the town clerk's office. The time is limited within which an appeal is demandable, and there must be a completed copy of the appraisal from which the appeal is to be taken. The taxes which were paid by the plaintiff, we hold, were illegally assessed. There were other objections urged in argument to the legality of the taxes assessed, which are not important to be considered at this time.

Assuming that No. 269, Sts. 1876, is constitutional, it does not in any way affect the question we have considered. That law attempted to validate the act of the listers in the town of West Windsor in assessing property belonging to estates, to such estates, instead of to the executors and administrators of such estates, and made provision for the enforcement and collection of the taxes so assessed against such executors and administrators.

Judgment reversed ; and judgment for plaintiff for $217 and interest from March 28, 1877, and costs.