## WILLIAM S. BROCK v. SAMUEL BRUCE AND TR.

*Lister. Oath. Filing List. Evidence. School Committee. Collector Sworn. Taxation. Tax Law of* 1880. R. L. s. 14.

1. LISTER—OATH. The final oath taken by the listers, acting under the tax law of 1880, was in effect that they had estimated the value of the real estate at such sums as they " would appraise the same in payment of a just debt due from a solvent debtor "; *Held,* that it was equivalent to stating that they had appraised it " at its true value in money," as required by the statute. (*Walker* v. *Burlington,* 56 Vt. 131, distinguished.)

2. OATH. A lister's oath need not embody a statement of compliance with every detail of official duty; thus, it is presumed that the valuation relates to the time required by law, *i. e.,* April 1; also that it was made on the basis required by law; as, the current value of the property, etc.

3. FILING LIST—DATE—TOWN CLERK. The statute does not require the town clerk to minute the date of filing the personal list in his office.

4. LIST MADE IN GOOD FAITH UPHELD. The validity of the lists, when made in good faith, is always upheld, if the errors complained of are only the result of mistake of judgment. Here it was claimed that there were erasures in some cases; but the court assumed that the listers acted in good faith, as it did not appear that they were in fault in not making the list more perfect.

5. SCHOOL DISTRICT COLLECTOR SWORN. A school district collector need not be sworn.

6. QUESTION FOR JURY. When a collector's notice to a tax-payer is too indefinite as to the time he would be at home to receive his taxes, it is properly left to the jury to say whether the tax-payer had refused to pay at all.

7. EVIDENCE. In an action to recover a tax, the testimony of an attorney, in effect, that he saw the defendant just before the suit was brought and that he refused to pay the tax, was properly excluded.

8. EVIDENCE—QUESTION FOR JURY—SCHOOL COMMITTEE. A school committee's certificate attached to the rate bill, showing for what purpose the tax was assessed, may be contradicted; and it was for the jury to determine whether anything was included that was not voted by the district; as, repairs of the school-house.

9. QUESTION NOT IN EXCEPTION. The court declined to decide whether the defence could be made under the general issue, as the question was not raised in the exceptions.

ASSUMPSIT, under the statute, to recover a school tax. Plea, general issue, trial by jury, June Term, 1884, Caledonia County, ROSS, J., presiding. Verdict ordered for the defendant.

The plaintiff offered to prove by Stoddard, a witness referred to in the opinion, that, as attorney for the plaintiff and just before he brought this suit, he saw Bruce and told him that he had better pay this tax; that Bruce refused to pay it and said he never would. As to the notice, the plaintiff testified that he called upon Bruce for the tax two or three times, showed him the tax, and that Bruce refused to pay it; that he told him that he should be at home any day to receive it; that this notice was within a week or two after he got the tax-bill; that Bruce had never paid the tax, nor offered to pay it; that he tried to find personal property upon which to levy the warrant, but was unable to do so, and so commenced this suit by trustee process. The parties lived in the same village.

On cross-examination by Mr. Ide, the plaintiff said that he first asked the defendant for the tax in a certain store; that he said to him, "Will you pay your tax to-day, Mr. Bruce?" That Bruce replied, "No, sir." "Think I spoke to him more than twice, but not certain." "Told him I would be at home most any day to receive this tax." "Spoke to him again in post-office. I said, 'Will you pay your tax to-day, Mr. Bruce?'

"He said, 'No, sir. When men put their hands in my pocket and take my money I want to know where it is going to.'"

The oath taken by the listers was: "We do solemnly swear that we have set down all the real estate situated in the town of Barnet, according to the best of our information, and we have estimated the value of such real estate at such sums as we would appraise the same in payment of a just debt due from a solvent debtor, and that the list aforesaid contains a true statement of the aggregate amount of taxable personal estate of each person named in such list, according to the best of our information and belief."

Copy of certificate of prudential committee prefixed to the tax-bill:

"The within school tax is 20 per cent. on the grand list of school district No. 5, Barnet, Vt., assessed to pay the current expenses of the schools for the year, and for painting the school-house and other repairs."

The other facts are sufficiently stated in the opinion of the court.

*Bates & May*, for the plaintiff.

The oath contains everything which the statute requires. It was in accordance with the form prescribed for those years when there was an appraisal of real estate. Gen. St. Chap. 83, s. 35. It fulfills perfectly the requirements of sections of 317, 332, R. L., while the one which the defendant claims should have been taken—sec. 350—does not. It also fulfills the test laid down by Powers, J., in *Walker* v. *Burlington*, 56 Vt. 131.

This court has never decided that sec. 350, R. L., was in force April 1, 1881, and that the listers must take the oath named in sec. 350, in order to render the list of 1881, a legal basis of taxation, and the question was not raised or discussed in *Walker* v. *Burlington*.

The prudential committee had the right to make all suitable and proper repairs upon the school-house without any vote of the district.

The evidence tended to show the necessity for, and propriety of, the repairs.

The defendant contends the repairs in excess of the vote were entirely without authority, even if *all* repairs were not so. The plaintiff urges that the statute in terms authorizes the prudential committee *without vote* to do what in fact was done in this case.

The court has given this statute a liberal interpretation and held in *Norton* v. *School District*, 37 Vt. 521, that the committee could recover for wood and blackboard; and in *Brown* v. *School District*, 55 Vt. 43, that he could recover for board of teacher, notwithstanding the vote of district that teacher should board around, etc.

But we say that it does not appear that the expense of these repairs made any part of tax list in dispute. The case distinctly shows that the repairs were paid for from the treasury April 22, 1882, and from money then on hand.

*Ide & Stafford*, for the defendant.

The final oath to the list of 1881 was not in accordance with the Act of 1880, sections 1, 16, 17. There is no certificate or oath that the property was "appraised and set in the list at its true value in money." *Walker* v. *Burlington*, 56 Vt. 131, has decided the law to be that real estate appraisals must be verified by the final oath of the listers that they have complied with the requirements of the law; and that the listers are to find these requirements in the general body of the law upon the subject. Now the oath appended by the listers to the list of 1881 is the oath prescribed by an act passed in 1855 (chap. 83, sec. 35, Gen. St.), when the requirements of the law regarding the basis and method of appraising the value of real estate were radically different from the law as enacted in No. 78 of the Acts of 1880, which is the law governing the list in question. The old form no longer expressed a compliance with the legal requirements.

The personal list of 1882 was fatally defective. It was incomplete. Section 15 requires the listers to lodge a *com-*

*pleted* list in the town clerk's office " on or before the 25th day of April." This list was never completed. " In some cases there was no entry opposite the name of the person, in others an erasure, in other cases the entry, ' in suspense.'" The book offered as the personal list was marked on the outer cover: " Personal and poll list for the town of Barnet, 1882 and 1883." There was no evidence to show who did the marking. It was not done by the town clerk. There was no writing or certificate of any kind by any person that the book was the personal list. Does a mere list of names with sums annexed *prove itself* as a legal personal list?

The plaintiff was not legally sworn. He should have taken the oath required by the Constitution. *Houston* v. *Russell*, 52 Vt. 110.

The Constitution required him to swear that he would " faithfully execute the office of collector, and therein do equal right and justice to all men, to the best of his judgment and abilities, according to law." *Courser* v. *Powers*, 34 Vt. 517.

The plaintiff did not give the required notice. R. L. s. 374. The defendant only refused to pay the tax " to-day." He should have had six days' notice. The tax was illegal. The prudential committee had no right to make general and expensive alterations in the building. *Russell* v. *Dodds*, 37 Vt. 497; *Bowen* v. *King*, 34 Vt. 156; *Adams* v. *Crowell*, 40 Vt. 31.

The opinion of the court was delivered by

ROWELL, J. The oath attached to the list of 1881 is in form like that prescribed by sec. 35, c. 83, Gen. Sts., to be used in the years of the general appraisal of real estate.

No. 78 of the Statutes of 1880, provided that real estate should be appraised and set in the list in 1881 "*at its true value in money*" on the first day of April in that year, and that all taxable property should be appraised by the listers

at such sums as they would appraise the same in payment of a just debt due from a solvent debtor, "*having regard to the current value of such property, and the sales thereof other than auction sales, in the locality where it is situated.*" The oath contains a statement that the listers estimated the value of the real estate at such sums as they would appraise the same in payment of a just debt due from a solvent debtor, but it does not state that they appraised it at its true value in money, nor upon what basis they made their valuation, and for these omissions it is claimed that the oath is defective and the list void.

As to the omission to state that the real estate was appraised at its true value in money, it is sufficient to say that the statement contained in the oath is equivalent to that; for it is the statutory duty of appraisers, in appraising land to pay a debt, to appraise it at its true value in money. This is the view adopted in *Houghton* v. *Hall*, 47 Vt. 333. In *Walker* v. *Burlington*, 56 Vt. 131, the form of oath used was that prescribed by sec. 36, c. 83, Gen. Sts. for annual lists, and contained *neither* of these equivalent statements. The case does not decide that it should have contained *both*.

As to the other omission complained of, we think it was not necessary for the oath to contain it. The General Statutes required listers, in the appraisal of real estate, to have reference to the value thereof on the first day of April of the year of their appraisal, and the Revised Laws require substantially the same thing; but it was never thought necessary for their oath to contain a statement of compliance with this requirement, although the same reason for it exists as is urged here, namely, that without it the oath would be perfectly consistent with the theory that their appraisal had reference to some other time. It is not the intention of the statute that the oath should embody a statement of compliance with every detail of official duty. The ordinary presumption of regularity that attaches to the official acts of

public officers generally has some application here. Thus, a grand-list, regular on its face and properly sworn to, is presumed to be correct until the contrary appears. *Wilson* v. *Seavey*, 38 Vt. 221. This involves the presumption that the valuation relates to the *time* required by law. Why may it not as well involve the presumption that it was made on the *basis* required by law? We think it does, and that the oath is sufficient without stating the basis.

As to the personal list of 1882, the defendant objected to its admission, because the town clerk "did not himself minute the date when it was filed in his office, and because in some cases there was no sum opposite the name of the person, in others, an erasure, and in others, the entry, 'in suspense.'" As to the first objection, the statute did not require the town clerk to minute the date of filing in his office. The statute required the listers to *lodge* it there on or before the 25th of April, and the time of such lodgment could be shown by parol. *Blodgett* v. *Holbrook*, 39 Vt. 336, 343.

As to the second objection, it does not appear how imperfect the list was in the respects complained of, nor why the imperfections existed, nor that the listers were in fault in not making it more perfect; and we must assume therefore that they acted in good faith in the matter, and the defendant has not been injured, for as to him, no complaint is made but that his personal list was complete. Now, without deciding whether the personal list is essential to the validity of the grand-list or not, or if it is, what imperfections therein will invalidate the grand-list, the case is one for the application of the doctrine laid down in *Wilson* v. *Wheeler*, 55 Vt. 446. There the listers did not comply with the law in the ascertainment and appraisal of property, and they neglected to set in the list $500 in money that should have been set to a ratable inhabitant; but it was held that the grand-list was not thereby invalidated as a basis of taxation; and the court said that it had always upheld the validity of lists when made in good faith and the errors

complained of were the result of mistake in judgment of town officers; and that to require of listers a strict and technical compliance with all the requirements of the law in making lists, would invalidate most of the lists in the State and render it impracticable, if not impossible, to make lists on which taxes could be collected. We re-affirm this doctrine. It is salutary in the highest degree.

We have been cited to no statute, and we think there is none now, requiring school district collectors to be sworn. The court held in *Houston* v. *Russell*, 52 Vt. 110, that such a collector, appointed by the selectmen to fill a vacancy, must be sworn; but the case was put solely on the statute then in force, and not at all on the constitutional provision requiring every officer, whether judicial, executive, or military, *in authority under this State*, before he enters upon the execution of his office, to take and subscribe the oath of office. It is contended that a school district collector comes within this provision, and that he must take and subscribe the oath of office. But the course of legislation and judicial decision on this subject shows that this provision has never been regarded as applying to town and school-district officers; and we understand the general practice to have been, not to require such officers to be sworn, in the absence of any statute making it necessary. They are not regarded as *in authority under this State*, within the meaning of the Constitution, but rather as *in authority under their respective municipalities*. The Legislature has from time to time enacted that certain town and school-district officers should take the official oath; from which the implication arises that without such legislation the oath was thought not to be required. And sec. 14 of the Revised Laws seems to imply that this constitutional provision is not universal in its application; for it enacts that the word " sworn," when applied to public officers *required by the Constitution to be sworn*, shall refer to those oaths; and when applied to *other officers*, it shall mean sworn to the faithful discharge of

the duties of their offices before a person authorized to administer oaths.

But we regard this question as settled by the decisions of this court. In *Lemington* v. *Blodgett*, 37 Vt. 210, it was expressly held, there being no statute requiring it, that selectmen need not be sworn. In *Day* v. *Peasley*, 54 Vt. 310, the same thing was held, although the contrary contention was based upon the Constitution, as shown by the brief of plaintiff's counsel. Of course, it cannot be contended that school-district collectors come within the Constitution if selectmen do not.

We do not think the plaintiff's notice to defendant was sufficiently definite as to the time when he would be at home to receive his tax; but we do think there was sufficient evidence of an absolute refusal to pay to entitle the plaintiff to go to the jury on that question, and to warrant the jury in finding that the defendant meant by what he said that he would not pay at all.

Stoddard's testimony was properly excluded.

The tax is said to be illegal because it includes an assessment for repairs, neither authorized to be made nor voted to be paid for. Whether the repairs were authorized or not is not material, for if they were, a tax could not be assessed therefor unless voted, because, as said in *Rowell* v. *Horton*, 57 Vt. 31, a vote of the district is the only authority for assessing a tax, and a tax assessed without a vote or beyond a vote is void; and here was no vote to raise a tax to pay for repairs, but only for "the expense of said schools." But the case shows that $210.72 of public money were paid into the treasury in March, 1882, and that these repairs, $165, were paid for on April 22, 1882, thus leaving an apparent balance in the treasury of $45.72. On May 22, 1882, the committee paid in $100 more, which the treasurer *supposed* to have been borrowed by the district that day. This would make the apparent balance in the treasury $145.72. The whole amount of the tax assessed was $434.60,

being $43.93 less than the whole expense of the schools for the year, which was $478.53. Thus it appears that the tax and the $45.72 would pay the expense of the schools and $1.79 more. It would seem, therefore. that nothing was included in the tax for repairs, although there may have been to pay the $100, which may have been, and probably was, used by the district for some purpose; but how that was does not appear.

There was, then, evidence *tending* to show that the tax did not include anything for repairs or anything else but the expense of schools; and although the certificate of the committee attached to the rate-bill shows that the tax was assessed for "painting the school-house and other repairs" as well as for the "current expenses of the schools," yet it is not conclusive, and may be contradicted—*Read* v. *Jamaica*, 40 Vt. 629—and the fact shown, if it be a fact, that nothing was included for repairs or for any other improper purpose, and the plaintiff had a right to go to the jury on that question.

Some discussion was had at the bar about the defendant's right to make his defence under the general issue; but as the exceptions do not raise the question, we take no notice of it.

VEAZEY, J., did not sit.

Judgment reversed and cause remanded.