Lynde *v.* Dummerston.

## LEWIS H. LYNDE *v.* THE TOWN OF DUMMERSTON

### *Grand List.    Oath of Listers.*

1. If the listers in taking the oath prescribed by section 29 of No. 2 of the Acts of 1882 add immediately before the words "So help me God" the words "to the best of our judgment," that addition will render the oath null, and the subsequent grand list invalid.

2. A tax-payer is not estopped from denying the validity of a grand list by the fact that as chairman of the selectmen he made out the tax-bill from that grand list and put it into the hands of the collector for collection.

This was an action of general assumpsit to recover taxes paid under protest, and was tried by jury at the September Term of the Windham County Court, 1887, Ross, J., presiding. The taxes in question were assessed on the grand list of 1885. Section 29 of No. 2 of the Acts of 1882 reads as follows:

"Each lister shall take and subscribe and file in the town clerk's office before entering upon the duties of his office the following oath, and the oath as subscribed shall be recorded in the town or city clerk's office:

'I,                , do solemnly swear (or affirm) that I will appraise all the personal and real property subject to taxation in the town (or city) of            , so far as required by law, at its true value in money, and will set the same into the grand list of said town (or city) at one per cent of its true value in money, and will faithfully discharge all the duties conferred upon me by law. So help me God.'

And if the listers violate such oath they shall be guilty of perjury and punished accordingly."

Note.—First heard at the February Term of the Windham County Supreme Court, 1888. Re-argued at the General Term, 1888. Filed Feb. 1, 1889.

Lynde v. Dummerston.

The listers in case of the list in question added to the above oath next before the words "So help me God," the words "to the best of our judgment." The plaintiff claimed on the trial that this was such a departure from the prescribed form as to to render the list void. The court held otherwise and the plaintiff excepted.

The plaintiff was chairman of the selectmen of the town, and as such made out the rate bills under which the tax was collected, and put them into the hands of the collector for collection.

*Waterman, Martin & Hitt,* for the plaintiff.

The grand list was unlawfully made because of the interlineation in the preliminary oath. The statute has prescribed the taking of a particular oath. That statute is mandatory, and the listers have no discretion in the premises. The statute declares that the taking of *that* oath shall be perjury, and the listers have no right to substitute any other for it. They have no right to judicially determine what this oath means. The course of the Legislature in omitting from the form of this preliminary oath as prescribed in 1872 almost the exact words which these listers have incorporated shows that that body did not intend them to be there. *Newell* v. *Whitman,* 58 Vt. 341; *Fairbanks & Co.* v. *Kittredge,* 24 Vt. 13; *Wilson* v. *Marshall,* 34 Vt., 359; *Smith* v. *Hard,* 59 Vt. 13; *Walker* v. *Burlington,* 56 Vt. 131.

*Hawkins & Stoddard,* for the defendant.

The interlineation of the words "to the best of our judgment" does not vitiate the oath. They neither add to nor detract from nor qualify in the least particular the oath formulated by the Legislature. *Henry* v. *Chester,* 15 Vt. 460; *Spear* v. *Braintree,* 24 Vt. 414; *Wilson* v. *Marsh,* 34 Vt. 310; *Ayers* v. *Moulton,* 51 Vt. 115; *Day* v. *Peasley,* 54 Vt. 352; *Wilson* v. *Wheeler,* 55 Vt. 446; *Newell* v. *Whittingham,* 58 Vt. 341.

(4)

The opinion of the Court was delivered by

ROWELL, J. The St. of 1882, No. 2, s. 29, provides that each lister shall take, subscribe, and file in the town clerk's office before entering upon the duties of his office, an oath, the form of which is given, that he will appraise all the personal and real property subject to taxation in his town, as far as required by law, at its true value in money, and set the same into the grand list of the town at one per cent of such value, and faithfully discharge all the duties conferred upon him by law; and a violation of the oath is made perjury. In this case the listers supplemented that oath with the words, "to the best of our judgment." That the taking of that oath is essential to the validity of the grand list, was decided in *Ayers* v. *Moulton,* 51 Vt. 115, where it was not taken at all. But the question here is, Do the words added vitiate the oath, and so the list? It is claimed that they do not, because it is said that they do not affect the legal quality of the oath; that what would be perjury without them would be equally perjury with them; and many cases are cited to show that it is sufficient if the substance of the oath be taken. But this is not determinative of the question in the circumstances of this case, for another consideration steps in to control.

When that oath was first formulated in 1872, it was general in its terms, simply requiring a faithful performance of duty as required by law, to the *best of the judgment and ability of the listers.* But in 1880, the Legislature materially changed and strengthened the tax law, with a view to the taxation of property not before taxable or not taxed in an effective way, and of forcing from its covert other property already taxable, and one of the means for accomplishing this object was, the requirement of a more faithful and effective performance of duty on the part of listers, who are the main instruments of the law in laying the requisite foundation for enforcing public revenue; and so the preliminary oath of 1872 was recast and made more specific and stringent, and the words, " to the best of my judgment

and ability," left out of it. It was again recast in 1882, and those words still left out.

Thus it appears that the Legislature laid stress upon the absence of those words from that oath, for what it has done amounts to a declaration that they shall not be in it, and it does not lie with the court to say that they may be, for the Legislature is the ultimate arbiter in the matter. The idea may have been that their presence would tend to ease the conscience of listers; and we know as matter of experience that they or equivalent words are sometimes supposed to mitigate an oath, and that men will sometimes readily swear to a thing according to their best knowledge and belief that they would hesitate or refuse to swear to in more positive form; and it is practical wisdom to legislate with reference to men as they are rather than as we may fancy they ought to be.

But whatever the reason for dropping those words, they *were* dropped, and we cannot say that they were meaningless and idly dropped. The Legislature thought otherwise. We do not say that a formulated oath must always be literally followed, and that no departure from its language is allowable. What we say is, that what the Legislature deems material we cannot pronounce immaterial.

*Cambria Street,* 75 Pa. St. 357, is considerably in point. There, viewers to assess damages for land to be taken for a street were required by statute to take an oath to perform their duties " impartially and according to the best of their judgment." The oath they took was, " faithfully to discharge their duties ;" and it was held null. The Court said : Admitting that an oath of this kind would be as binding on the conscience of honest men as any that could be framed, yet it is not the one directed by statute. The Legislature had a purpose in view in the oath that is prescribed, and the one taken does not fulfill it. The act may be supercautionary, but of this neither the jury nor the court are to judge. It is our duty to obey that which is written. Cf. *Merritt* v. *Portchester,* 71 N. Y. 309.

Lynde *v.* Dummerston.

*Brock* v. *Bruce*, 58 Vt. 261, where it was held that the words of the final oath were equivalent to the statutory words for which they were substituted, and therefore sufficient, differs from this case in that there was no formulated oath and no such significant legislation declaration as here.

We do not understand that it is claimed that the plaintiff is estopped to take advantage of the illegality of the grand list because he was chairman of the board of selectmen and caused the tax to be assessed as voted and put into the hands of the collector for collection, but only that he is thereby estopped to say that the tax was not legally voted. But if the first mentioned claim is made, we hold against it as lacking many, if not all, the essential elements of an estoppel.

The other questions raised in the case need not be considered.

*Judgment reversed and cause remanded.*