## ZACCHEUS FLINT *v.* WILLIAM WHITNEY.

*Tax collector's warrant. Tender of property to prevent taking body of delinquent. Copy and return to be left with jailor.*

A warrant for the collection of highway taxes is insufficient, if, in the event of the neglect of any of the persons assessed to pay their taxes, the only command to the collector be " to proceed with him or them as the law directs."

To make the collector of a tax liable in trespass merely for taking the body instead of the property of a delinquent tax-payer, there must be a distinct offer to him of some specific property. A general request to take property and proof that the person assessed had property will not suffice.

The omission of a tax collector, who commits a delinquent to jail on account of the non-payment of his tax, to certify his doings on the copy of his warrant left with

the jailor cannot be supplied by parol proof of his proceedings. The original warrant not being a returnable process, a certificate of the collector thereon is not so far in the nature of a return as to be conclusive upon the parties.

TRESPASS for false imprisonment. Plea, the general issue, and notice of a justification under a warrant for the collection of a highway tax against the plaintiff. Trial by the court, January Term, 1856,—UNDERWOOD, J., presiding.

The defendant was one of the highway surveyors in the town of Brookfield for the year 1852; and on the 24th of May of that year the selectmen of that town placed in his hands a tax-bill and warrant, of which the following is a copy.

"STATE OF VERMONT, *Orange County, ss.* To William Whit-
"ney, one of the surveyors of highways in Brookfield, in said
" county, *Greeting,*
" By the authority of the state of Vermont, you are hereby com-
" manded to collect of the several persons named in the within
" tax-bill, inhabitants who are liable to pay highway taxes in said
" Brookfield, the sums annexed to their names, in money or labor,
" and cause the same to be laid out in making and repairing the
" roads and bridges within the limits hereinafter described, viz., the
" same as last year."

(Here follow the names of the persons assessed, with the amount of their respective grand lists and taxes, among which is that of the plaintiff.)

" Three-fourths of the tax to be collected and laid out as afore-
" said, between the first day of May and the first day of July next;
" and the remainder between the first day of September and the
" first day of November next. For labor, you are to allow, for a
" good hand, ten cents per hour; for a yoke of oxen, per day, $1.00;
" for a pair of good horses, per day, $1.25; for a cart, plough and
" scraper, in proportion, and, if damaged, to be made good. And,
" if any person or persons shall neglect to pay said sum or sums
" in labor as aforesaid, you are to proceed with him or them as the
" law directs. Hereof fail not," &c., &c.

The defendant called upon the plaintiff several times for the payment of his said tax, and, at the time in question, met him away from his home and inquired of him what he was going to do about the tax. The plaintiff said he did not know, but as the defendant should say, he supposed. The defendant then read his warrant to

the plaintiff, and told him he had a right to take his body or property. The plaintiff asked him if he would not take the property. The defendant said no, and that he wanted his body then, and thereupon the plaintiff surrendered himself, and the defendant committed him to jail in Chelsea. It appeared that the plaintiff then had a horse, sleigh and buffalo robes with him, and three or four hundred dollars in money in his pocket, but he did not turn out or designate any property for the defendant to take to satisfy the tax, and he refused to pay it.

Upon the trial, the defendant, to justify the arrest and commitment of the plaintiff, offered in evidence his rate-bill and warrant, together with his return annexed thereto in which the defendant's proceedings in collecting said tax of the plaintiff were set forth, and in which he stated that, upon the commitment of the plaintiff, he left with the jailor a true and attested copy of the rate-bill and warrant, with his doings thereon endorsed. This evidence, though objected to by the plaintiff, was admitted by the court, subject to all legal objections. The plaintiff offered in evidence a copy of said rate-bill and warrant without any return whatever accompanying it, and proposed to inquire of the defendant, who was a witness in the case, if this was not the copy, and the only copy, he left with the jailor at the time he committed the plaintiff to jail, and whether the return introduced by the defendant was not made at a subsequent time. To this evidence the defendant objected, insisting that the return on the original warrant was conclusive, and not subject to be inquired into. The court overruled the objection and admitted the testimony, from which it appeared that the only copy left with the jailor, at the commitment, was the paper offered by the plaintiff, and that the return on the original warrant was not made by him until a month or more afterwards. Upon this state of facts, the court rendered judgment for the plaintiff.

Exceptions by the defendant.

*Perrin* and *Peck & Colby* for the defendant.

When the plaintiff refused to pay his tax, the defendant had the right to arrest him, unless he requested him to take property. This he did not do. It does not even appear that the defendant knew that the plaintiff had property.

The rate-bill and warrant are in the usual form.

The return on the warrant is conclusive between these parties in this action. Had the defendant been sued for a false return, it would then have been competent for the plaintiff to show the .*falsity* of the return. But the question now arises collaterally, and, in such case, parol evidence is not admissible to contradict the return. *Hawks* v. *Baldwin*, Brayt. 85 ; *Carney* v. *Dennison*, 15 Vt. 400.

*J. B. Hutchinson, S. M. Flint* and *J. P. Kidder* for the plaintiff.

The warrant is not sufficient. The defendant is not therein commanded to take either the goods or chattels or the body of the delinquent. It is not in the form prescribed; Comp. Stat. p. 616, form 23. It is bad for want of substance.

The same powers are given to highway surveyors that are to constables; Comp. Stat. p. 178, § 21. "For want of goods and chattels whereon to make distress, the constable may take the body of such delinquent." Comp. Stat. p. 464, § 14.

The case shows that the plaintiff, at the time of the arrest, "had a horse, sleigh and buffalo robes with him," and the defendant *re-fused* to take property, but "wanted his body then."

He should have left with the keeper of the jail an attested copy of his warrant, and have certified his doings thereon; Comp. Stat. p. 464, § 15 ; *Henry* v. *Tilson*, 19 Vt. 447.

A regular tax-bill and warrant, of themselves, are not a sufficient justification ; *Collamer* v. *Drury*, 16 Vt. 574 ; *Downing* v. *Roberts*, 21 Vt. 441. The original warrant is not a returnable precept; nor is the return thereon evidence, the officer not being required by law to certify his doings, except upon the jail copies; *Hathaway* v. *Goodrich*, 5 Vt. 65 ; *Spear* v. *Tilson*, 24 Vt. 420.

The opinion of the court was delivered by

REDFIELD, CH. J.   I. It seems to us the form of the warrant, in this case, is so essential a departure from the form given in the statute, that it should be regarded as altogether insufficient. It, in truth, omits everything, almost, which is requisite to constitute a valid warrant. It is a mere direction to the officer that if the persons assessed do not pay their tax, "to proceed with him or them as the law directs." If the officer did not follow the statute more

clearly than the form of the warrant does, we could scarcely conjecture what he might not feel justified in doing, under such general words. It reminds one of the form of the aboriginal warrant to arrest one for crimes. "I, Hihondi. Quick you take A. B. Fast you hold him. Straight you bring him before Hihondi"! This is even more specific than the warrant in the present case. Still it has been contrasted with the forms of such process, in modern states, as a significant antithesis.

II. We are not satisfied that there was any such refusal to take property, as should make the defendant a trespasser. There was nothing like an offer of property, but, from what passed at the time of the arrest, it is evident the defendant's understanding was that, if he took property, he must wait and go to some distance. For he said, "he wanted his body then." If the plaintiff had been serious in desiring the defendant to accept of property in discharge of the body, he should have made some distinct offer of some specific property, especially as he had abundance with him at the time. The statute is express, that the collector may execute his warrant "wherever he may find the property or body of the delinquent." He was not obliged to delay.

III. Chapter 81, § 15, requires the officer, in committing a delinquent for taxes, to leave a copy of his warrant, and "certify his doings thereon in relation to such delinquent." This was not done in the present case. In *Henry* v. *Tilson*, 19 Vt. 447, this is held indispensable, and that the omission cannot be supplied by proof at the trial that the officer had, in fact, proceeded regularly. And, in a case between the same parties, 17 Vt. 479, it was held that such a warrant, even where there is commitment, is not returnable process, so that the surveyor's certificate, entered upon the warrant at a future day, cannot be treated as in the nature of a return upon process, and so conclusive upon the parties.

Judgment affirmed.