# RUTLAND COUNTY, JANUARY TERM, 1886.

PRESENT: ROYCE, CH. J., POWERS, ROWELL, and WALKER, JJ.

———

## DAVID T. ROWELL v. EDWIN HORTON.

### Tax Law of 1880 and of 1882.

1. LISTER'S OATH. It is not necessary that a lister should take the constitutional oath.
2. DOUBLING CLAUSE OF TAX LAW. Under the Act of 1882, listers cannot double the amount obtained by arbitrary assessment. In doubling they must proceed as under the Act of 1880, and find property *in specie*, appraise it, and double the sum so ascertained.

REPLEVIN. Trial by jury, September Term, 1885, VEAZEY, J., presiding. Verdict *pro forma* directed for the defendant.

*J. C. Baker* and *E. J. Ormsbee,* for the plaintiff.

To justify the defendant must show that they were legal taxes. *Buzzell* v. *Johnson,* 54 Vt. 90; *Howes* v. *Bassett,* 56 Vt. 141; *Iron Works* v. *Cone,* 56 Vt. 603; *Hughes* v. *Vail,* 57 Vt. 41.

The listers were not properly qualified for their duties, by reason of not having taken the constitutional oath of office.

There is no excuse from taking the oath of allegiance, except evidence that the officer has before taken it. The clause of the oath of office, "and will therein do equal

right and justice to all men," is a valuable safeguard, and the omission of it is well illustrated by the arbitrary and partial execution of the office by these listers.

There is no office that requires more safeguards than that which has for its functions the establishment of a basis upon which the money of the citizen is taken for the support of government, and the maintaining of the public service.

The purpose of the final oath required by statute is to validate the completed list. It can only authenticate what has been done at the time the oath was appended. If this list was not sworn to after it was completed, it is void. *Walker* v. *Burlington*, 56 Vt. 131. After a grand list is sworn to and deposited the listers have no further power over it to make alterations or corrections. *Downing* v. *Roberts*, 21 Vt. 441; *Bellows* v. *Weeks*, 41 Vt. 590. The grand list could not have been completed on the 25th of April, so as to be sworn to and deposited in the town clerk's office. The listers must meet on the first Tuesday in May, to hear persons aggrieved, and correct the list. Acts 1882, No. 2, s. 21. After that meeting there must be the opportunity for an appeal to the board of civil authority. Acts 1882, No. 2, ss. 22 and 23.

The hearing of parties aggrieved, with a right to appeal therefrom, is one of the most important, substantial rights reserved to the tax-payer by this statute; and no grand list can be completed until it has been corrected by the result of those hearings. The effect of completing, swearing to, and depositing the grand list, before the time for hearing and appeal, just as effectually forecloses the tax-payer from his rights as a refusal to hear him at all. *Howes* v. *Bassett*, 56 Vt. 141.

The listers proceeded illegally under the doubling clause of the statute.

*P. R. Kendall* and *Lawrence & Meldon,* for the defendant.

The law does not require selectmen or listers to take the oath of office. *Lemington* v. *Blodgett,* 37 Vt. 210; *Day* v. *Peasley,* 54 Vt. 310. But it does not appear that the listers did not take the constitutional oath. "The exceptions upon this point are: No evidence was offered to show that the listers took this oath," except the oath appended to the grand list. And it was incumbent upon the plaintiff to show they were *not* sworn if such was the fact, and, unless the contrary was proved, it would be presumed they were. *Putnam* v. *Dutton,* 8 Vt. 396; *Adams* v. *Jackson,* 2 Aik. 145; *Lemington* v. *Blodgett,* 37 Vt. 210. It is immaterial whether or not the listers took or subscribed any other oath than appears by the case. They were, in any event, *de facto* officers, and their acts cannot be brought in question collaterally. Their acts are valid as to all the world save in an action directly against them by an injured party. *Lyndon* v. *Miller,* 36 Vt. 329; *State* v. *Bates,* 36 Vt. 387; *Adams* v. *Jackson, supra; Taylor* v. *Nichols,* 29 Vt. 104; *The People* v. *Collins,* 7 Johns. 549; *Bucknam* v. *Ruggles,* 15 Mass. 180; *Blake* v. *Sturtevant,* 12 N. H. 567.

In making up plaintiff's list, it became the duty of the listers to ascertain as best they could his taxable property. This they did, and having evidence before them that plaintiff had this money, even though they may have erred in their finding that he then had it, they having acted without fraud and in good faith, and the list is not thereby invalidated. A mistake in judgment by the listers will not invalidate the list. *Wilson* v. *Wheeler,* 55 Vt. 446; *Henry* v. *Chester,* 15 Vt. 460; *Spear* v. *Braintree,* 24 Vt. 414.

This case is distinguished from *Howes* v. *Bassett,* 56 Vt. 141. There the listers acted "upon mere rumor," and they and the board of civil authority denied the plaintiff a hearing. Here it was shown to the listers, and it was not disputed, that the plaintiff shortly before this had something over $2,200 in his possession, and they deducted from this

over $700—nearly or quite all he claimed to have paid out. As to the balance, with it fully in his power to satisfy the listers just where it was and how situated, he utterly refused so to do; but, on the contrary, by his replies to their inquiries and his conduct, led them to believe that he still had it in his possession. We say his conduct was such as to fairly estop him from now setting up the contrary.

A certain *status* of property once shown to exist is presumed to continue until the contrary is shown.

The opinion of the court was delivered by

WALKER, J. This action of replevin is brought to recover the possession of a mare distrained as the property of the plaintiff, and of which he is entitled to the possession unless the defendant's justification is made out.

The defendant attempts to justify the taking as collector of taxes for the town of Chittenden. As such collector, the defendant had put into his hands by the authorities of the town of Chittenden, certain rate bills of taxes, with warrants attached, assessed upon the grand list of 1883, containing certain taxes against the plaintiff.

To make out his justification, the defendant must show that the taxes which he is ordered by his warrant to collect are legal taxes. It is indispensable to the legality of a tax that it should be assessed upon a grand list of the polls and taxable estate of the inhabitants, made in substantial compliance with the requisitions of the statute. No tax can be upheld which is made upon an illegal list.

I. It is claimed by the plaintiff that the grand list of the town of Chittenden, for the year 1883, is illegal; because the listers for that year did not, before entering upon their official duties in taking and making up the list, take and subscribe the oath of office required by section 29 of chapter 2 of the Constitution of Vermont. By reference to said section it will be seen that the Constitution requires that every officer, whether judicial, executive, or military, *in*

Rowell *v.* Horton.

*authority under this State* before he enters upon the execution of his office shall take and subscribe the oath of office given therein.

This requirement of the Constitution has never been regarded by the people, nor by the legislature of the State, as extending to and including such officers as derive their authority to act from towns and other municipal bodies; and to hold that it includes town, village, and school district officers would be giving a new construction to the language used in the section.

We think this requirement to take and subscribe an official oath applies only to such officers, judicial, executive, and military, as are *strictly* state officers, and such county and probate officers as were by section 9 of said chapter 2, before the amendments thereto, required to be elected by the general assembly; to wit, *first,* such as derive their authority to act from the votes of the freemen of the State at large; *second,* such as are either elected or declared to be elected by the legislature of the State, or appointed by the governor of the State, and hold and discharge the duties of their respective offices under the authority of a commission duly executed and issued to them by the governor.

Chapter 2 of the Constitution, with the amendments thereto, relates to the plan or frame of the State government, and to the executive, legislative, judicial, and military departments thereof; to the qualification of freemen; to the election and qualification of the members of the legislature; to the election and qualification of governor, lieut.-governor, state treasurer, secretary of state, auditor of accounts, judges of the Supreme Court, major and brigadier generals, and other purely state officers, county officers, probate judges, and justices of the peace. It has no reference to the plan and frame of town governments, nor to the qualification of voters therein, nor to the election and qualification of the officers thereof. Towns are not the creations of

the constitution; they exist either by virtue of charters granted by the sovereign before the adoption of the Constitution, or by acts of the legislature, since its adoption, and derive their powers not from constitutional provisions but from legislative enactments.

Sec. 11 of said chapter 2 of the Constitution provides, among other things, that the *governor shall have power to commission all officers;* sec. 24 provides that *every officer of the State,* whether judicial or executive, shall be liable to be impeached by the general assembly; and sec. 29 provides that *every* officer, whether executive, judicial, or military, *in authority under this State, shall* take and subscribe the oath of office prescribed therein.

It is apparent that the word officer, as used in these sections, has reference only to such officers of the State as are either elected by the freemen at large or required to be commissioned by the governor, which includes all officers to which reference is made in said chapter.

No one would claim that the power given to the governor " to commission all officers " extended to and included town officers, nor that town officers were subject to impeachment by the general assembly; yet such a claim would be no more inconsistent than the claim that town officers are executive or judicial officers in authority under this State, because they are elected under and derive their power to act from a general law of the State.

Listers are elected by the legal voters of the several towns and derive their power to act as such from their election under the provisions of the statute, and are in authority by virtue solely of their election by their fellow townsmen in town meeting assembled; and in order to qualify them to act they must take and subscribe only such oaths as are prescribed by the laws of the State; and the taking and subscribing of the constitutional oath in question before entering upon the execution of their office is not one of the requirements of the statute.

Rowell *v.* Horton.

It is true that listers act under a general law of the State defining their powers and duties, which is designed to secure uniformity of taxation throughout the State and to equalize, so far as possible, the burden that must be borne to sustain the existence of our political organization.  But notwithstanding the object so sought is state-wide, and the result to be obtained so desirable, it does not make the listers state officers; they are, nevertheless, town officers, answerable for their official work only to the towns and the tax-payers whose list they make up.  They are no more state officers or officers in authority under this State than selectmen and other minor town officers who are either elected by the legal voters in town meeting or appointed by superior town officers, and whose powers and duties are defined by general laws of the State.  Town officers' immediate source of authority to act is not the votes of the freemen of the State at large nor a commission issued by the governor, but their election by the voters of the towns or their appointment by the superior officers of the towns to which their jurisdiction is limited; and they are in authority solely by virtue of their said election or appointment.

No fair-minded person would seriously claim that a surveyor of wood, an inspector of leather, or a board of fence viewers, town officers required by the statute to be elected annually, the same as listers, are officers judicial or executive in authority under this State, within the spirit and meaning of the Constitution, and required to take and subscribe the constitutional oath of office before entering upon the execution of their several offices, notwithstanding their acts are mainly of a judicial character; and there is no stronger reason for holding listers to be officers in authority under this State, within the spirit and meaning of the Constitution, than there is the class of town officers last mentioned.

It was held in *Lemington* v. *Blodgett,* 37 Vt. 210, that selectmen are not required to be sworn before entering

upon the execution of their office. It was also held in the case of Brock v. Bruce, post, that a school district collector is not an officer in authority under this State, required to take the constitutional oath of office. And we think that listers are not required to take and subscribe said constitutional oath in order to qualify themselves for the execution of the duties of their office. They are required to take only the oaths required by the statute.

II. Among the other objections made to the legality of the plaintiff's list, one is, that it was not made up in compliance with the requisitions of the statute.

The plaintiff made out and seasonably delivered to the listers an inventory of his taxable property and poll, sworn to in due form, in which he answered all the interrogatories required to be answered. And as the case stands upon the exceptions, treating whatever facts Mr. Baker's testimony tends to show, as found and in the case according to the concession, the inventory returned contained a full, true, and correct statement of all the plaintiff's taxable property. But the listers, having the knowledge that Lewis I. Winslow, one of their number, had paid the plaintiff $875 on the 21st day of September, 1882, and $1,331 more to his attorney for him, on the 14th day of February, 1883, were not satisfied with his said inventory, because he had not returned any part of said money for taxation. They called upon him and urged him to put in some of that money for taxation; but he refused, and made some explanation, which was not satisfactory to them, and declined to change his inventory. The listers, thereupon thinking they had sufficient reason to believe that the plaintiff's inventory did not contain a full, true, and correct statement of his taxable property, disregarded the same and attempted to make up the plaintiff's list under the provisions of sec. 17 of No. 2 of the Acts of 1882, which reads as follows:

"Sec. 17. If a person or corporation wilfully omits to make, swear to, and deliver said inventory, or to answer

any interrogatory therein, as by this act required, or make a false answer or statement therein, or if the listers have sufficient reason to believe that an inventory does not contain a full, true, and correct statement of the taxable property of the person or corporation filling out such inventory, according to the requirements of this act, then said listers shall ascertain, as best they can, the amount of the taxable property of such person or corporation; shall appraise the same at its value in money, and shall double the amount so obtained. And if the sum obtained by doubling is, in the opinion of the listers, less than the amount of the taxable property of such person or corporation, they shall further assess such person or corporation for a sum which will, in their judgment, make up such amount. * * * * And one per cent. of the amount obtained by doubling, and of the extra assessment, if any, or of the assessment, as the case may be, shall, with the amount of the taxable poll, if any, constitute the list of such person or corporation."

It will be noticed that this sec. 17 differs from sec. 10, No. 78 of the Acts of 1880 (R. L. s. 326), mainly in the addition of the following clause: " And if the sum so obtained by doubling is, in the opinion of the listers, less than the amount of the taxable property of such person or corporation, they shall further assess such person or corporation for a sum which will, in their judgment, make up such amount," and the clause following for assessing when no property of the tax-payer is found. No authority is given by this section to double the sum thus arbitrarily assessed. The doubling is limited, as it was under the Act of 1880, to the appraised value of the property *actually found in specie,* &c., and appraised.

In *Howe* v. *Bassett,* 56 Vt. 141, it was held that under the Act of 1880, no power was given to the listers to assess a person arbitrarily for taxable property, not visible; that the listers must find the amount of taxable property and then appraise it at its value in money and double the sum so ascertained; that the act contemplated that the listers should find property *in specie,* capable of appraisal, the value of which they were alone authorized to double and

set in the list. The Act of 1882 did not change this provision and requirement of the Act of 1880, so far as relates to the finding of property, the value of which the listers are authorized to double. The sum that the listers have power to double must be made up under the Act of 1882, the same as before, of property found *in specie* capable of appraisal. The belief of the listers that the tax-payer has property in addition to what they can find, however well founded, does not warrant them, after arbitrarily assessing the tax-payer for what they believe he has, in addition to what they can find, in adding the sum thus arbitrarily assessed to the value of the property actually found and appraised and then doubling the amount so ascertained. The sum arbitrarily assessed cannot be doubled under the Act of 1882.

The listers, in their attempt to make up the plaintiff's list under the provisions of said section 17, set down the plaintiff's real estate, which he had returned in his inventory, at $1,500, the quadrennial appraisal thereof in 1882, the value at which it was required to be put in the list when the list is made up from a full, true, and correct inventory; then they appraised the plaintiff's stock, which was given in his inventory, at $197. They found no other taxable, visible property *in specie*, notes, bonds, debts due, stocks, or of any kind, which was capable of appraisal as property, the value of which they were authorized to double; but they thought they had sufficient reason to believe that he had at least $1,500 of the money paid him by Winslow; they did not, however, find it *in specie*, debts, bonds, or notes due him, yet they proceeded to assess him arbitrarily, "$1,500, money, as we have good reason to believe," as they stated in the notice which they sent to the plaintiff, dated April 25, 1883, and added this latter sum to the value of the real estate and stock, making the sum of $3,197. They then doubled this sum so ascertained, making $6,394; and one per cent. of the sum, so ascertained by doubling, with the

Rowell *v.* Horton.

amount of his taxable poll, made $65.94, which they set to the plaintiff as his list.

The listers were not authorized by the statute to double the sum of $1,500, which they had thus arbitrarily assessed the plaintiff. In doubling the sum so arbitrarily assessed, they did not act in compliance with the provisions of the statute, and the list which they thus made up and set to the plaintiff was illegal, and will not uphold any tax assessed thereon, and affords no justification for the seizure of his property by the defendant upon the tax warrants in his hands. As the view we entertain of this point is decisive of the case against the defendant, it is not necessary that we should express opinions upon the other points which have been argued upon the hearing.

Judgment reversed, and judgment for plaintiff for one cent damages and his costs.