Smith v. Hard.

RALPH SMITH v. CHARLES HARD AND TR.

Taxation.　Act of 1880.　Listers' Oath.　R. L. ss. 329, 331.
Act of Legislature legalizing Grand List.　Retrospective
Statute.　Vested Right.

1.　The legislature has power to pass a retrospective act legalizing a grand list which was irregular or invalid, because the listers had only taken, but had not subscribed, the preliminary oath required by the statute, R. L. s. 329; and such grand list was admissible as evidence in an action to recover taxes assessed on that list, both before and after its legalization.

2.　The statute—R. L. s. 331—requiring listers to lodge in the town clerk's office an abstract of the personal lists of all taxpayers for their inspection, is mandatory.

Smith *v.* Hard.

Such abstract is an official paper, and must be signed, verified and authenticated by the listers in such unmistakable manner as to carry on its face fair evidence of its character; and if it is not, the grand list is invalid, and not admissible as evidence.*

ACTION by the plaintiff as collector of taxes for the town of Arlington, to recover town taxes assessed on the grand list of said town for the years 1881, 1882 and 1883, and state taxes for the years 1881 and 1882. Plea, general issue.

Trial by jury, June Term, 1885, Bennington County, WALKER, J., presiding. Verdict directed for the defendant. The case appears in the opinion.

*Batchelder & Barber*, for the plaintiff.

Signing the oath adds nothing to its binding force. Cooley Con. Lim. 88, 92; *Crosby* v. *School District*, 35 Vt. 623; *Free Press* v. *Nichols*, 45 Vt. 7; *Kellogg* v. *State Treasurer*, 44 Vt. 361.

Taking the oath is the essence of the thing to be done. 2 Desty Tax. 115; *Courser* v. *Powers*, 34 Vt. 517; *Ayer* v. *Moulton*, 51 Vt. 115; *Day* v. *Peasley*, 54 Vt. 310.

The statute as to signing is directory. *Mills* v. *Gleason*, 11 Wis. 470; Cooley Tax. 283; *State Auditor* v. *Jackson County*, 65 Ala. 142; *Linedecker* v. *People*, 98 Ill. 21; *Torrey* v. *Millbury*, 21 Pick. 64; *Pittsburg* v. *Coursin*, 74 Pa. St. 400. The act passed by the legislature validated the lists.

This act was in its nature retrospective. The Constitution of the State does not forbid retrospective legislation.

A retrospective statute curing defects in legal proceedings, when they are in their nature irregularities only, is not void on constitutional grounds unless expressly forbidden. *Tifft* v. *City of Buffalo*, 82 N. Y. 204; Cooley Tax. 301. If the thing wanting as to making the list could have been dispensed with by a prior statute, it may be dispensed with by a subsequent act of the legislature. Cooley Con. Lim. p. 457; Cooley Tax. p. 302; 2 Desty Tax. 607; *Foster* v. *Forster*,

*See *Willard* v. *Pike, post.*

129 Mass. 559; 97 U. S. 687; *Matter of Sackett*, 74 N. Y. 95; *Sinclair* v. *Learned*, 51 Mich. 335; *Dubuque* v. *Wooton*, 28 Iowa 571; *New Orleans* v. *Clark*, 95 U. S. 644; *State* v. *Heman*, 70 Mo. 441; *People* v. *Goldten*, 44 Cal. 323; *In re Hewitt's Appeal*, 88 Pa. St. 55.

It is always a matter within the control of the legislature to determine what shall, or shall not, be legal grand list. *Bellows* v. *Weeks*, 41 Vt. 590. A party has no vested right in a defence. Cooley Con. Lim. 456; *Grimm* v. *Weissenburg School Dist.* 57 Pa. St. 433; 92 N. Y. 591.

The abstract of personal lists filed by the listers in town clerk's office was sufficient. The defendant was not injured by its want of formality, and hence cannot set it up as a defence. *Mills* v. *Gleason*, 11 Wis. 470; *Torrey* v. *Millbury*, 21 Pick. 64; *Magee* v. *Commonwealth*, 10 Wright, 388; *Pittsburg* v. *Coursin*, 74 Pa. St. 400; *State Auditor* v. *Jackson County*, 65 Ala. 142.

*Burton & Menson* and *J. C. Baker*, for the defendant.

The statute requiring listers to take *and subscribe* the oath is mandatory, and must be substantially complied with. R. L. s. 329; *Ayers* v. *Moulton*, 51 Vt. 115.

The command applies equally to the taking and the signing, and the statute cannot be said to be substantially complied with when either is omitted.

Two distinct acts are required of the lister before his qualification is complete. Here there was no attempt to comply with the second requirement.

This view cannot be met by saying that the taking of the oath is the main thing, and the signing a mere formality connected with it.

The legislature has seen fit to require of the lister something beyond the ordinary taking. He is required not only to take the oath verbally, but to subscribe his name to the oath on paper.

The additional act is one calculated to fix the attention upon

the requirements of the oath, and impress the lister with the importance of the duty he assumes.

The act legalizing the lists of 1881 and 1882 did not affect the defendant's taxes, which were assessed prior to the passage of the act. *Tunbridge* v. *Smith*, 48 Vt. 648; *People* v. *Holladay*, 25 Cal. 300; 3 Denio, 594; *People* v. *Lynch*, 51 Cal. 15; 56 Cal. 508; 44 Ill. 278; 25 Wis. 271. There was no error in holding that the grand list of 1883 was invalid. The abstract filed in town clerk's office was not sufficient.

It is by an inspection of this abstract that the taxpayer ascertains if any action on his part is necessary to protect his rights; and his examination of it may result in a claim of grievance, a hearing by the listers, and an appeal to the board of civil authority.

Surely it must have been intended that a paper filed in a public office for such a purpose, to be followed by such proceedings, should have some mark of authenticity.

The opinion was delivered by

POWERS, J. The plaintiff seeks to recover certain taxes assessed against the defendant on the grand lists of Arlington for the years 1881, 1882 and 1883.

To prove the assessment of such taxes for the years 1881 and 1882 the plaintiff offered in evidence the grand lists of those years; and it appeared that the preliminary oath of the listers taken for those years was not subscribed by them as required by sec. 329, R. L., which provides that each lister, before entering upon the duties of his office, shall take *and subscribe* the following oath, etc.

It appeared that the listers, in fact, took the preliminary oath, and the jurat of the magistrate attesting the fact was attached to said grand lists. In connection with said grand lists the plaintiff offered in evidence Act No. 229 of the Laws of 1882, which purported to legalize said grand lists for the years 1881 and 1882. Passing the question whether the mere omission of the listers to subscribe their names to the prelimi-

nary oath, which had been confessedly duly taken, was an omission of a matter of substance which would invalidate their official acts, we come to a consideration of the effect of the act of the legislature legalizing said lists. It is agreed that the power of taxation is exclusively a legislative power. Circumscribed only by constitutional limitations, the legislature is the sole judge of the system and procedure proper for the assessment and collection of public taxes. For municipal purposes it has delegated the power to towns, and prescribed the regulations under which it may be exercised. One of the regulations is that the listers, in making up the grand list of a town, shall take and subscribe the preliminary oath in question.

The exact question then presented is, whether the legislature, having fixed the form and attestation of the listers' preliminary oath, can by subsequent act validate a grand list made up by the listers who have omitted to verify the taking of their oath of office by subscribing their own names thereto.

It is fully established on authority that the legislature may pass retrospective laws unless prohibited in terms by the Constitution, or unless they are violative of vested rights affecting substantial equities. Cooley Con. Lim. (2d ed.) 369 ; 2 Desty on Tax. 607 ; *Tifft* v. *Buffalo*, 82 N. Y. 204 ; *Bellows'* v. *Weeks*, 41 Vt. 596, and many other cases cited by plaintiff.

This doctrine is everywhere extended to irregularities in the assessment of property for purposes of taxation and the levy of taxes thereon. *Bellows* v. *Weeks, supra; Butler* v. *Toledo*, 5 Ohio St. 225 ; Cooley Con. Lim. 371.

In *Tunbridge* v. *Smith*, 43 Vt. 648, the judge delivering the opinion, inadvertently, no doubt, uses the expression that a healing statute does not cure the invalidity of taxes assessed upon a defective grand list before it was legalized. This proposition is in conflict with the whole line of authorities, and on principle cannot be sound. The defendant in this case has no vested right of defence based upon an informality in his assess-

ment which does not affect his substantial equities. Cooley Con. Lim. 370. He was a taxpayer in Arlington, and legally bound to contribute his ratable share towards the revenues of this town. He is not seeking to escape therefrom upon any claim that he was unduly assessed or oppressively burdened, but solely on the technical ground that the listers have failed. to observe a comparatively unimportant formality in making up the grand list, not in the least prejudicial to him, and operating, if operative at all, upon the lists of all other taxpayers precisely as upon his. His grand list was in fact made by officers under oath, and any violation of that oath would make them answerable in criminal proceedings equally well, whether they subscribed their oath or not. The taxpayer has as much security in the one case as in the other.

The curative statute manifestly reaches back to taxes already assessed as well as to those thereafter to be assessed. The principle upon which this kind of legislation is upheld is that what the legislature might properly have done before the assessment it may, by relation, do afterwards. Judge Cooley formulates the doctrine as follows : "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by a prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute." The legislature might have dispensed with the requirement that the listers subscribe their official oath, and indeed it was never required until 1872. When therefore the healing Act of 1882 was passed, it cured the informality that resulted from their neglect to subscribe the preliminary oath ; and thereafterward the case stands as if no such subscription to the oath had ever been required. And as this oath antedates in time the assessment of the defendant's taxes, the curative statute has legal relation and effect as of the time such oath was taken. That the curative act should apply to taxes already assessed is clearly shown by the case of *Bellows* v. *Weeks, supra.*

In *Grimm* v. *School District*, 57 Penn. St. 433, it was held that a suit brought to recover taxes paid under protest on an unlawful list was defeated by a subsequent curative statute; and many other cases illustrating the doctrine that the defendant has no vested right of defence to the taxes assessed against him prior to the passage of the curative act are referred to in all the works treating of this subject, and they all point in one direction. *Bacon* v. *Callender*, 6 Mass. 303; *Butler* v. *Palmer*, 1 Hill, 324; *Miller* v. *Graham*, 17 Ohio St. 1; *Watson* v. *Mercer*, 8 Pet. 83; *Mather* v. *Chapman*, 6 Conn. 54; *Bristol* v. *Supervisors*, 20 Mich. 93; *Yeaton* v. *United States*, 5 Cranch, 231.

It was error therefore to exclude the evidence offered to show the taxes assessed against the defendant in the years 1881 and 1882.

A different question arises in respect to the taxes assessed against the defendant in 1883.

The defendant objected to his assessment for 1883 on the ground that no abstract of the personal lists of the taxpayers was lodged in the town clerk's office, as required by law, and that therefore the grand list of that year was invalid.

The plaintiff's evidence tended to show that a paper containing a list of names arranged in alphabetical order, and columns for polls, personal property and offsets, was lodged in the town clerk's office April 25th, 1883, as such abstract; and the town clerk endorsed thereon the time when he received it, and that he showed this paper to persons calling for such abstract. This paper was not signed by the listers, and contained no statement of what it purported to be.

Section 331 of the Revised Laws provides that: "The listers of each town shall arrange in alphabetical order the personal lists of all taxpayers, and lodge the same in the town clerk's office on or before the 25th day of April of each year, for the inspection of the taxpayers."

The purpose to be accomplished by lodging this abstract of individual lists in the town clerk's office by April 25th is to be

gleaned from other sections of the same chapter, which with this constitute the system on which the grand list is made.

The personal lists are compiled from the inventories of individual taxpayers which the listers accept, and the appraisals made when inventories are not returned or accepted, and cover two classes of personal property: (1) Money on hand, debts due and to become due, stock-in-trade or manufactures; and (2) horses, cattle, sheep, watches, carriages and all other taxable personal property.

Section 346 provides that: "On or before the 1st. day of May the listers shall lodge with the town clerk a written notice stating on what day. and at what place they will meet to hear persons who may be aggrieved by their assessments, giving at least ten days' notice thereof; and to persons assessed for money on hand, debts due or to become due, stock-in-trade or manufactures, they shall, on or before the 3d day of May, give notice of a time and place of hearing, personally, or by leaving a written notice at the place of business or dwelling-house of of such persons. And at the place and time appointed, and from day to day thereafter, the listers shall sit and hear until all applications are heard and decided, but not later than May 14th."

The next section provides for an appeal by aggrieved persons from the decision of the listers to the selectmen.

Section 346 then gives to persons dissatisfied with their assessments the opportunity to be heard before the listers; and failing to get relief on such hearing, a right of appeal is conferred by section 347.

The assessment referred to is that shown by the personal list lodged in the town clerk's office by April 25th, as required by section 331. Notice of this assessment, so far as it covers personal property generally, is found at the town clerk's office on or before May 1st, and so far as it covers money, debts due, etc., personal or written notice is to be given on or before May 3d.

The object then of filing the abstract of personal lists, as

required by section 331, is to inform taxpayers who may inspect it definitely and officially of the assessments made against them by the listers. Taxpayers, under the statute, have no other information on this subject, and they have the right to be informed and to a hearing, if dissatisfied. Without opportunity to be heard the assessment would be invalid.

The abstract, being filed for the purpose of notice to the taxpayer, and being a judicial determination of the amount of his taxable personal estate, respecting which he is entitled to be heard and to appeal from, if dissatisfied, should clearly be an official paper that does not and cannot mislead taxpayers whose rights are to rest upon it. It is too loose to say that they may inquire of the town clerk, and may examine such paper as he chooses to produce to them. The town clerk is under no official obligation to file such paper or answer any questions respecting it. The abstract is in fact an official paper; when made up, one step in the process of making a grand list has been taken; when filed April 25th, it is *the grand list*, so far as personal property is concerned, completed and finished, unless changed by the result of the hearing contemplated by section 346. Taxpayers inspecting it have the right to understand that the grand list, as finally executed on the 15th of May, will show their assessments for personal estate precisely as they appear on such abstract, barring inadvertent mistakes, and govern themselves accordingly. Such abstract being a judicial determination of the amount of each taxpayer's personal estate liable to taxation, and being lodged in the town clerk's office as the basis of complaint by taxpayers dissatisfied, we hold that it should be verified and authenticated by the listers in such unmistakable manner as to carry on its face fair evidence of its character. It should be signed by the listers, and certified as the personal list of taxpayers for the current year, or bear otherwise equivalent evidence of authenticity.

In this case the filing by the town clerk, showing the date when the paper was left in his office, added nothing to the document. The statute does not require the town clerk to

make such endorsement, and thus no official authenticity is accomplished if he volunteers to make it. The statute requires *the listers* to *arrange* in alphabetical order the personal lists of all taxpayers, and *lodge* the same in the town clerk's office on or before April 25th, *for the inspection of the taxpayers*. Nobody else can discharge this duty. The listers must do it as a part of their official procedure in making up the annual grand list. The taxpayers have the right to *inspect* it for vital purposes affecting their interests. It subjects them to a legal liability. It is one step necessary to fasten such liability upon them. It settles a question irrevocably against them, unless they can change it on hearing. It is clearly a mandatory and not a directory statute; and for all these reasons must be, in fact and in name, the deed of the listers, complete in itself, and not dependent upon the verification of other persons, strangers to it.

This statute requires the listers to lodge in the town clerk's office a written notice stating the time and place when they will hear persons aggrieved by their assessments. Suppose the listers leave a written notice covering these points but omit to sign it, the town clerk files it on the day it is received, but it bears no evidence that it was executed by the listers, would it be seriously contended that the taxpayer was bound to regard it as the notice required by the statute? and if the town clerk told him it was the act of the listers, would it be thus authenticated in any legal sense?

Chief Justice SHAW, in *Torrey* v. *Millbury*, 21 Pick. 64, states the rule respecting mandatory statutes in clear and comprehensive terms, as follows: "In considering the various statutes regulating the assessment of taxes and the measures preliminary thereto, it is not always easy to distinguish which are conditions precedent to the legality and validity of the tax, and which are directory merely, and do not constitute conditions. One rule is very plain and well settled, that *all those measures that are intended for the security of the citizen, for insuring equality of taxation, and to enable every one to know*

*with reasonable certainty for what polls and for what real estate he is taxed, and for what all those who are liable with him are taxed*, are conditions precedent; and if they are not observed, he is not legally taxed, and he may resist it in any of the modes authorized by law for contesting the validity of the tax. But many regulations are made by statutes designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, a compliance or non-compliance with which does in no respect affect the rights of taxpaying citizens. These may be considered directory."

This is the doctrine laid down in all the cases, and it is directly applicable to the statute in question. There was no error in excluding the grand list of 1883.

The judgment of the County Court is reversed, and the case remanded for a new trial.