# REUBEN TAYLOR *v.* LEVI B. MOORE.

*Collector's bond.   Parol evidence.   Treasurer's warrant.*
*Amendment of return.   Grand list.*
*Alphabetical abstract.*

1. The question being whether the defendant was qualified as collector of taxes, it may be shown by parol that he gave a bond which was accepted by the selectmen.

2. A treasurer's warrant for the collection of taxes under R. L. 386 is a returnable process, returnable to the treasurer who issued it. He alone can allow an amendment of the officer's return thereon, and he may allow almost any amendment in accordance with the facts and at almost any time, so that it does not affect rights already acquired upon the strength of the return. When amended the return is *prima facie* evidence for the officer making it.

3. In case the listers make up a taxpayers' list because he has refused to return an inventory under oath, their judgment as to amount of his property, if unappealed from, is conclusive, provided they have information which legitimately tends to show the possession of such property by the taxpayer. And a letter to the listers from the town clerk of another town in this state stating that certain mortgages appear of record is information from which they may find that the amount of such mortgages is due the taxpayer.

4. R. L. 331, requiring the listers to make and lodge in the town clerk's office on or before April 25 an alphabetical abstract of the personal lists, is satisfied if the grand list itself is lodged on or before that time. That section does not call for a statement of the property which makes up each individual list, but only for the total amount.

Trespass for the taking of certain personal property. The defendant justified under a tax warrant. Trial by jury at the May term, 1887, Windsor county, Walker, J., presiding. Verdict and judgment for the defendant. The plaintiff excepts.

Taylor *v.* Moore.

For the purpose of showing that he had duly qualified as constable the defendant was permitted to testify that he had furnished a bond which had been accepted by the selectmen. The plaintiff excepted to the admission of this evidence for that the bond itself was the best evidence.

The town regularly voted to collect its taxes through its treasurer, and the treasurer issued in due form his warrant to the defendant for the collection of the plaintiff's tax. Upon trial the defendant introduced this warrant with the following return :

"STATE OF VERMONT, ⎰
  Windsor County. ⎱

At Plymouth, this 28th day of December, 1882, by virtue of this warrant I levied on one pair of oxen and five cows as the property of Reuben Taylor, one of the within named delinquent tax-payers who neglected and refused to pay said delinquent tax, and disposed of according to law, and this my return endorsed thereon.

Attest, L. B. MOORE, Collector.

| Amount of tax, | $161.70 |
| Name, | .05 |
| Fees, | 25.62 |
| Cost of keeping, | 24.00 |

$211.37

Amount from sale, $240.00

Balance due said Taylor, $28.63.

L. B. MOORE, Collector."

Thereupon the defendant offered to show by parol his doings upon the warrant. This evidence being excluded by the Court, he then offered the following amended return with the leave of the treasurer to make the amendment, and the same was admitted:

" Now comes Levi B. Moore, collector of taxes for the town of Plymouth, and asks leave to amend his above return which is granted."

L. J. GREEN, Town Treasurer.

---

Taylor *v.* Moore. ·

---

STATE OF VERMONT, ⎱ At Plymouth in said County by virtue of
Windsor County, ss. ⎰ the foregoing warrant to me directed on
the 20th day of November, A. D. 1882,. I demanded of Reuben
Taylor named in the foregoing list of delinquent tax-payers as
certified by the treasurer of the town of Plymouth, to which this
warrant is attached, the unpaid portion of the tax assessed to him
as named in said list, namely, one hundred sixty-one dollars and
seventy cents with five cents in addition for the name of said
delinquent in said list. And on said 20th day of November I
notified the said Reuben Taylor that I would be at my store in
said Plymouth on the 4th day of December, A. D. 1882, at one
o'clock in the afternoon to receive the sums above named. The
said Reuben Taylor refusing and neglecting to pay the same or
any part thereof and not exposing to me any goods or chattels
from which to satisfy said tax, on the 5th day of December at
said Plymouth I levied upon one pair of oxen and five cows as
the property of the said Reuben Taylor and on the 9th day of
said December I advertised that said oxen and five cows would
be sold at Public Auction at the barns of Nathan and E. A. Hall
in said Plymouth, on the 16th day of December, A. D. 1882, at
one o'clock P. M., by posting notices thereof, one at the barn of
Nathan & E. A. Hall and one at the store of Levi B. Moore,
Public Places all in Plymouth. Said tax remaining unpaid on
the 16th day of December, at the time and place named in said
notices I sold at public auction

| | | | | | | | |
|---|---|---|---|---|---|---|---:|
| One pair of oxen to Warren R. Taylor for | | | | | | | $150 00 |
| " cow to Warren R. Taylor for | | | | | | | 20 00 |
| " | " | " | " | " | " | " | 21 00 |
| " | " | " | " | " | " | " | 20 00 |
| " | " | " | " | " | " | " | 16 00 |
| " | " | " | " | " | " | " | 13 00 |

he being the highest bidder for the same. The amount
of said sale being $240.00.

| | |
|---|---:|
| The tax as before named being | $161 70 |
| Treasurer's fees for same | 05 |
| | $161 75 |

Fees and charges :

| | |
|---|---:|
| 8 per cent. of tax, | $12 94 |
| Two miles travel before levy, | 12 |
| Moving property, | 2 00 |
| Two notices and posting same, | 30 |
| Dollarage on sale of property, | 2 76 |

Taylor *v.* Moore.

| | | |
|---|---|---|
| Care of property, | $5 | 00 |
| 100 meal, | 1 | 40 |
| Attending sale, | 1 | 00 |
| Paid E. A. Hall for keeping property 12 days, | 24 | 00 |

which makes the amount of tax and charges thereon two hundred eleven dollars and thirty-seven cents.

Balance after paying costs and legal costs is twenty-eight dollars and sixty-three cents, which I have paid over to the said Reuben Taylor.

And on this 28th day of December, 1882, I return said warrant with this my doings hereon endorsed with the amount so collected.

Attest,     LEVI B. MOORE, Collector of Taxes.

The leave to amend was asked for and granted and the amendment made druing the progress of the trial.

In making up the plaintiff's list preparatory to doubling the same the listers assessed him for certain personal property about which there was no dispute. They further assessed him for $7,300, due on Sherburne mortgages. The only information which they had in reference to these mortgages was furnished them by the following correspondence between one of their number and the Town Clerk of Sherburne:

"Plymouth, April 15, 1882.

Town Clerk.—Will you please send me the amount of mortgages in your town, Sherburne, held by Reuben Taylor or his wife of Plymouth.

(Signed,)   HENRY A. HUDSON, Lister.

P. O. Address, Bridgewater Corners, Vt."

To which the Town Clerk of Sherburne replies as follows:

"Sherburne, Vt., April 21, 1882.

Dear Sir:—According to the record, Mr. Taylor's mortgages in this town amount to $7,300. If I have not made any mistakes. I think I have not.

(Signed,)     Yours truly,
C. W. ADAMS, Town Clerk."

Upon trial the plaintiff proposed to show that there was due him a very much less sum than $7,300 upon those mortgages.

The exception to the charge appears in the opinion.

*Gilbert A. Davis*, for the plaintiff.

The court had no power to allow an amendment of the return upon the warrant during the progress of the trial. *Langdon* v. *Poor*, 20 Vt. 13; *Judevine* v. *Jackson*, 18 Vt. 476; *Taylor* v. *Pierce*, 19 Vt. 49; *Gay* v. *Gardener*, 54 Me. 477; *Hackett* v. *Amsden*, 57 Vt. 432; *Hathaway* v. *Goodrich*, 5 Vt. 65; *Henry* v. *Tilson*, 19 Vt. 447; *Flint* v. *Whitney*, 28 Vt. 680; *Boardman* v. *Goldsmith*, 48 Vt. 403.

There was no evidence before the listers from which they could legitimately find due on the Sherburne mortgages the sum at which they assessed the plaintiff on that account. *Howe* v. *Bassett*, 56 Vt. 142; *Rowell* v. *Horton*, 58 Vt. 1.

The completed grand list could not take the place of the abstract required by the statute.

*Smith* v. *Hard*, 59 Vt. 13; *Bartlett* v. *Wilson*, 59 Vt. 23; *Smith* v. *Hard*, 61 Vt.

*W. W. Stickney*, for the defendant.

The fact that the defendant had given a bond was properly proved by parol.

*Sprague* v. *Hosmer*, 82 N. Y. 471.

Prior to 1880 a tax warrant was not a returnable process, and the collector's doings upon it might be shown by parol.

*Hathaway* v. *Goodrich*, 5 Vt. 65; *Henry* v. *Tilson*, 17 Vt. 479; *Spear* v. *Tilson*, 24 Vt. 420; *Flint* v. *Whitney*, 28 Vt. 680.

If now a returnable process, the return may be amended as in every other case. And mere lapse of time is no reason to the contrary.

*Freem. Executions*, s. 359; *Thatcher* v. *Miller*, 11 Mass. 413; *Rucker* v. *Harrison*, 6 Murf. 181; *Scott* v. *Trustees*, 5 U. C. Pr. 228; *Richards* v. *Ladd*, 4 Pac. Coast L. J. 52; *Gilman* v. *Stetson*, 16 Me. 124; *Scruggs* v. *Scruggs*, 46 Mo. 271.

Taylor *v.* Moore.

Nor will the fact that legal proceedings are pending in which it is involved, alter the rule.

*Buck* v. *Hardy*, 6 Greenl. 162 ; *Gavitt* v. *Doub*, 23 Cal. 78 ; *Colby* v. *Burns*, 36 Mo. 194; *People* v. *Ames*, 35 N. Y. 482; *Cady* v. *Quinn*; 6 Ired. 191; *Stone* v. *Wilson*, 10 Grat. 529 ; *Sheldon* v. *Comstock*, 3 R. I.; *Palmer* v. *Thayer*, 28 Conn. 237 ; *Kitchen* v. *Reinsky*, 42 Mo. 427 ; *Morris* v. *Trustees*, 15 Ill. 266 ; *Talcott* v. *Rosenberg*, 8 Abb. N. S. 287 ; *Railroad Co.* v. *Butler*, 53 Ill. 323 ; *Barlow* v. *Stanford*, 82 Ill. 298 ; *Bacon* v. *Bassett*, 19 Wis. 45 ; *DeArmond* v. *Adams*, 25 Ind. 455 ; *Kirkwood* v. *Reedy*, 10 Kan. 453 ; *Moyer* v. *Cook*, 12 Wis. 335.

Nor that the officer has gone out of office.

*Adams* v. *Robinson*, 1 Pick. 461 ; *Johnson* v. *Donnell*, 15 Ill. 97 ; *Keene* v. *Briggs*, 46 Me. 467 ; *Palmer* v. *Thayer*, 28 Conn. 237 ; *Avery* v. *Bowman*, 39 N. H. 393.

The amendment was properly allowed by the authority to whom the process was returnable.

*Durfey* v. *Hoag*, 1 Aik. 286 ; *Pond* v. *Campbell*, 56 Vt. 674 ; *Downs* v. *Flanders*, 150 Mass. 92.

The listers had jurisdiction and no error in valuation could be taken advantage of in resisting payment of the tax. Their judgment was conclusive.

Cool. Tax. 748 ; *Wilson* v. *Wheeler*, 55 Vt. 446 ; *Bartlett* v. *Wilson*, 59 Vt. 23 ; *Bullock* v. *Guilford*, 59 Vt. 516.

Lodging the list itself did away with the necessity of lodging any other abstract of personal lists.

R. L. s. 266, et. seq.; *Wilson* v. *Wheeler*, 55 Vt. 446.

The opinion of the court was delivered by

ROSS, J. There was no error in receiving parol evidence that the defendant gave a bond as constable and collector which was accepted by the selectmen. The identity and existence of a

written instrument, together with the time when it was given and accepted may be shown by parol evidence. The instrument, if produced, might not furnish evidence in these respects. If the contents of the bond had been involved in the inquiry, a different question would have been presented, which might have merited different consideration.

II. The treasurer's warrant under which the defendant justified by R. L. 386, was a returnable process, upon which the defendant was required to set forth his doings in collecting the taxes from the plaintiff. His return thereon was conclusive evidence against the defendent, and *prima facie* evidence in his favor. *Hathaway* v. *Goodrich*, 5 Vt. 65, *Bourdman* v. *Goldsmith*, 48 Vt. 403. It issued from and was returnable to the treasurer. The collector was required to set forth his doings thereon in his return, that the town treasurer and others interested might be informed what he had done in collecting the taxes committed to him. It is not a step nor evidence of a step required to be taken and recorded in a particular way and at a specified time to convey the title of property from the owner to the purchaser, like returns in tax sales of real estate. In such cases the passing of the title depends upon the return being made and recorded in compliance with the requirements of the statute, in manner and time. As the proceedings are not effectual to pass the title such returns cannot be amended after the time in which they are required to be made and recorded for the obvious reason that such amendments would affect the rights of third persons. This suit proceeds upon the basis that the defendant's sale was effectual to pass the title, and does not come within the cases relative to creating title in land taxes. It is an amendable return.

It is well established that the tribunal issuing a returnable process, which is required to be returned to itself, is the only proper power to grant leave to the officer serving the same, to amend his return thereon. *Barnard* v. *Stevens*, 2 Aik. 429; *Bent* v. *Bent*, 43 Vt. 42; *Brainard* v. *Burton*, 5 Vt. 97; *Pond* v. *Camp-*

Taylor *v.* Moore.

*bell,* 56 Vt. 674. From these authorities it is apparent, that after such process has been returned no amendment to his return can be made by the officer making the service without the leave of the tribunal to which it is returnable. Otherwise the records of such tribunal might be changed without its consent. It also further appears that such tribunal has unlimited power to grant leave to the officer to amend his return according to the facts, unless such amendment will effect the right of third parties, who have acquired an interest in the property subsequently to the making of the return, and perhaps in reliance upon the truth of the return as originally made. The authorities cited by the defendant's counsel on this point, show that there is no limited time within which such amendments must be made. The plaintiff is the party directly affected by the return amended. He does not stand in the relation of a third party to it. Such amended return, when offered by the officer who made it, is only *prima facie* evidence of the facts stated therein. If false in fact, the plaintiff was not precluded from showing it, and the defendant was liable for making a false return. Under the circumstances shown, the treasurer properly allowed the amendment to be made, and the County Court properly admitted the same in evidence. The treasurer, having power to issue the warrant, and being its legal custodian when returned, was charged with more than a ministerial duty in regard to it. He was to adapt the warrant to the facts as they existed when he issued it. His dealings with the collector were to be governed largely by the collector's return made thereon. In *Henry* v. *Tilson,* 19 Vt. 447, and *Flint* v. *Whitney,* 28 Vt. 680, the right of an officer to amend his return upon a returnable process is not considered, and the cases have no bearing upon this point.

III. The plaintiff, in April, 1882, did not make, under oath, an inventory of his taxable property. The listers thereupon were required to ascertain "as best they can" what taxable property he possessed. The language, "as best they can" indicates

that the listers are given the right to employ any lawful means to ascertain the amount of taxable property belonging to such delinquent taxable person. They must either find the property, or have some legitimate information or evidence tending to show that the person has the property, before they can proceed to appraise it. *Weatherhead* v. *Guilford,* 62 Vt. 327. This is necessary to give the listers jurisdiction, to act under the provision of the statutes. They can not lawfully act upon supposition or rumor. *Howes* v. *Bassett,* 56 Vt. 141; *Rowell* v. *Horton,* 58 Vt. 1; *Bullock* v. *Guilford,* 59 Vt. 516. When the listers have such information or evidence of the existence of taxable property belonging to the delinquent taxpayer, they have jurisdiction to proceed under this provision of the statute, and their action, if taken in compliance with the provisions of the statutes, is judicial, and their judgment unappealed from binds the taxpayer, and cannot be inquired into collaterally. *Weatherhead* v. *Guilford, supra; Bullock* v. *Guilford, supra; Fulham* v. *Howe,* 60 Vt. 351. If the taxpayer would seek relief from their judgment, he must seek it in the way pointed out in the statute, by a further hearing before the listers and then by an appeal to the board of civil authority. He cannot maintain silence, when he should speak, and then overthrow the judgment of the listers by introducing new evidence in a suit brought for the collection, or to recover back, taxes assessed on the list thus made. Hence, the only question to be considered in this branch of the case is, whether the listers had information or evidence which gave them jurisdiction to act under this provision of the statute. The letter received by the lister, Hudson, from the Town Clerk of the town of Sherburne, was information on which the listers could act. Any person who had examined the records, could give evidence in reference to what undischarged mortgages he found there recorded, given to the plaintiff. Such information or evidence would tend to show that the plaintiff then owned such mortgages, and the sum of money due thereon. It would not be conclusive. The listers

seasonably informed the plaintiff of the information thus received, and gave him notice of what the listers had done, and of a time and place when and where they would hear him in regard to the same. It is immaterial whether the plaintiff replied, as testified to by Hudson that he thought the listers were hard on him; that they had got in a small mortgage twice, or as he testified, that he never had $7,300 in mortgages in Sherburne. When he did not appear to contradict the truth of the information they had received, at the time and place appointed, they had some information on which to find that he owned that amount of mortgages in Sherburne. Hence, having information which gave then jurisdiction to proceed in this manner, and from that having found in good faith that he possessed this amount of taxable property, he, not having availed himself of the offered oppurtunity to correct any mistake contained in the information, became bound by their judgment thereon, and could not, on the trial in the County Court, be permitted to show there were errors in this information, nor could he in any way attack collaterally, and overthrow the judgment which the listers had thus arrived at against him. This excludes the inquiry which the County Court allowed to be gone into, whether the listers made all reasonable efforts to ascertain as best they could the taxable property which the plaintiff then owned. Although the listers had entered the $7,300 of mortgages in Sherburne against the plaintiff, in the grand list, before they gave him notice, his list was still incohate, subject to alteration by them, and by the board of civil authority, and then passed into final judgment against him only by his acquiesence, or neglect to avail himself of the means afforded by the law for its correction. Hence, his failure to avail himself of this opportunity was a potent fact, almost amounting to an admission of the plaintiff that the information received from the Town Clerk was correct, and that his qualified denial of it, if made, to Hudson, was not insisted upon. On this state of information, it was immaterial upon the trial in the County Court what the reply of the plaintiff

to Hudson, when the latter gave the notice, was, whether as the plaintiff testified, or as Hudson testified. Whether the plaintiff had $7,300 worth of mortgages in Sherburne, or did not have that amount, or whether the plaintiff's reply was as claimed by him, or as testified to by Hudson, was immaterial. Whichever way the jury should establish it would not touch the jurisdiction of the listers to proceed under this provision of the statute. The only question open on this point in the County Court to the plaintiff was, whether the listers had such jurisdiction.

IV.   The plaintiff excepted to that portion of the charge in which the Court said, " I hold and charge that the lodging of the grand list in the town clerk's office on the 25th day of April, as the abstract of personal lists, removed the necessity of lodging on that day a formal abstract of personal lists of the taxpayers, inasmuch as the list contained in alphabetical order the personal list of all the taxpayers, and as the grand list was subject to the control of the listers until the 15th day of May for making any necessary changes therein." The correctness of this portion of the charge must be determined by the construction to be given to R. L. 331, which reads, " The listers in each town shall arrange in alphabetical order the personal lists of all taxpayers, lodge the same in the town clerk's office on or before the 25th day of April, of each year, for the inspection of the taxpayers of each town." This statute was first enacted in 1880. It is to be executed by listers, men generally unlearned in the law, but plain, practical men. Its evident purpose is to have deposited in an accessible place, information from which every taxable inhabitant can ascertain, at least, the amount of his list derived from his personal estate or property, and also the amount set to him, as compared with the several amounts derived from such property set to the other taxable inhabitants of the town. The plaintiff contends that it should contain more than this; that it should contain a schedule of all the personal estate appraised, belonging to each taxpayer, with the sum at which each article is appraised. He contends

that without this, the taxable inhabitant cannot determine whether he has been assessed. too much, compared with the other taxable inhabitants of the town, and whether he desires further hearing or appeal to the board of civil authority. In considering this contention this Court is to construe the statue, rather than enact one which it might think would be more appropriate, and better subserve the purpose of the legistature. It is to be borne in mind that the legislature has not specified what such personal lists shall contain, as it has with reference to the grand list, R. L. 348. It has left the contents to be determined and the law to be carried into execution by such men as the listers would be liable to be. The word "list" is used in the statute in many places, and generally as signifying the amount derived under the law, from the appraisal of his property, on which the individual's taxes are to be assessed. The personal list is that portion of the entire list derived from his personal property and is to be filed earlier than the completed grand list; and it can hardly be supposed that the legislature intended that it should be fuller and require more labor to make it than is required to make and file the grand list, which would be the case on the plaintiff's contention. It is further to be borne in mind, that the resident taxpayer, by the statute containing this provision, is required to make and furnish to the listers a detailed inventory of his taxable property, and of claimed deductions for debts due and owing. Hence, he is presumed to know for what personal property he ought to be taxed, and what its fair value is. The listers are a board selected by the taxpayers, not partizan, and presumed to have no motive to do any taxpayer an injustice, but to deal fairly and justly by him. Presumably they will give every taxable inhabitant, on inquiry, any information with reference to their valuation of his taxable property, or that of any other taxable inhabitant. If not, he can compel them to do so under oath in a hearing on his appeal to the board of civil authority.

With these considerations in mind, the words personal lists,

should be given their ordinary natural meaning, the meaning which the men charged with the execution of the law would naturally place upon them. To do more than this, to attempt to extend them into details, would be to set 241 boards of listers to conjecturing what details should be added, and if they failed to make their judgment correspond with the judgment which the Court might reach, have the lists made by them declared void. This would incorporate too much uncertainty and hazard into this provision of the law, and overthrow rather than establish the rights of the taxpayers generally; defeat rather than promote the legislative intent. This court has had this provision of the statute under consideration in several cases; and quite plainly, if not directly, intimated the construction to be placed upon it. It first came before the court in *Brock* v. *Bruce*, 58 Vt. 261. No complete personal list was filed, and the book left with the town clerk was not authenticated by the signature of the listers. In some cases there was no entry opposite the name of the person, in others, an erasure, in other cases the entry "in suspense." It did not give details, but gave the poles and personal lists only. The want of authentication, or that it was wanting in details do not appear to have been insisted upon, nor considered. It was held, following *Wilson* v. *Wheeler*, 55 Vt. 446, that the defects did not invalidate the grand list; and was left undecided whether or not the personal list is essential to the validity of the grand list. At the General Term, 1886, this subject was considered in *Smith* v. *Hurd*, 59 Vt. 13, and in *Bartlett* v. *Wilson*, 59 Vt. 24. In the first case, the book filed for the personal list contained the names of the taxpayers arranged in alphabetical order, and columns for polls, personal property, and offsets. In the last case, the form of the book is not given, but is described as " an alphabetical list of the personal lists " of the taxpayers, except the plaintiff's name and personal list was not contained in it. The opinions, with reference to this class of lists, deal mostly with the necessity of their being authenticated officially by the signature

of the listers. It is to be observed that the necessity of authentication need not have been considered, if the personal lists as made were inherently defective, and for that reason void. The opinions discuss the object and purpose of requiring these lists, and what classes of property they must cover, (1) "Money on hand, debts due and to become due, stock in trade, or manufactures; (2) horses, cattle, sheep, watches, carriages and all other taxable personal property." In *Smith* v. *Hard*, it characterizes the individual taxpayer's personal list as "a judicial determination of the amount of his taxable personal estate." Of the personal list it says: "The abstract is in fact an official paper; when made up, one step in the process of making a grand list has been taken; when filed April 25th it is *the grand list*, so far as personal property is concerned, completed and finished, unless changed by result of the hearing contemplated by section 346. Taxpayers inspecting it have the right to understand that the grand list, as finally executed on the 15th of May, will show their assessments for personal estate precisely as they appear on such abstract, barring inadvertent mistakes, and govern themselves accordingly." In *Bartlett* v. *Wilson*, the court say: "The personal list is the judicial determination of the listers of the amount of the taxpayer's personal estate that should enter into the annual grand list to be completed in May." The books put in evidence in these cases were before this court, and their sufficiency to answer the requirement of the statute, both in the manner of their make up and authentication, involved in the question under consideration. If these clear and explicit expressions of the court, defining the personal list and what it should contain, do not decide the contention of the plaintiff against him, they are very misleading. We think they do, and there was no error in this portion of the charge, so far as it held that the grand list contained all the information required to be contained in the personal list. The plaintiff does not contend that the grand list filed April 25th did not have the authentication, by the official signature of the listers, required to be given

to the personal list, but urges that it was misleading because it was a *completed* list, and that no appeal could be taken from a completed list. But so far as it related to the plaintiff's personal list, it was no more a completed list than the required personal list. As announced in the foregoing extracts, the personal list filed April 25th is the completed grand list of the taxpayer's personal estate, if unappealed from and unchanged. The same right to hearing by the listers and appeal to the board of civil authority exist if the personal list is included in the grand list, as if included in a separate personal list book. The listers had until May 15th to make any changes in the grand list, occasioned or required by such appeals. Hence, no right of the plaintiff was concluded by having the grand list, if it can be completed in season and filed, take the place of the personal list. It contains all the information in an accessible form, properly authenticated and filed in the required place, which the personal list is required to contain. The taxpayer's right to hearing and appeal, and the right of the listers to make the necessary changes, were not taken away or limited by this holding of the trial court. To hold this portion of the charge error, would be to hold that in the small towns, when the listers could complete and seasonably file the grand list, they should copy out of it the personal lists of the several taxpayers into a seperate personal list book, and file it at the same time. This would compel a useless expenditure by such towns, which the law never requires.

*The judgment of the County Court is affirmed.*

Royce, Ch. J. and Powers, J. dissent.